NELSON MORRIS

v.

PIERRE WIBAUX.

*Sales—Cattle—Warranty—Breach—Interest.*

1. Contracts should receive a reasonable construction. They should be given effect to in accordance with the manifest intention of the parties.

2. A purchaser of cattle can not insist that the obligation to receive the same was limited in a given case to the number estimated in the contract of sale " at about" a certain number of head, " more or less, " the same providing for the sale of " all of his steers " and " all of his dry cows," of general description and particular location, nor that no recovery can be had on such contract because some of the cattle did not meet the requirements of the contract.

3. The action in the case presented being for cattle sold and delivered, and for breach of contract—a failure to receive cattle, for the breach of the contract the burden of proof was upon plaintiff, the seller thereof;

but as to the cattle sold and delivered, the defendant, the purchaser, seeking to recoup damages because of a breach of warranty, the burden of proof was upon him as to such breach and as to any damages.

4. Plaintiff was entitled to interest at the rate of ten per cent under the statute of Montana on the price of the accepted cattle not paid for, but for which, under the contract, the plaintiff was entitled to payment when delivered.

[Opinion filed January 30, 1893.]

Appeal from the Superior Court of Cook County; the Hon. Jonas Hutchinson, Judge, presiding.

Messrs. Moran, Kraus, Mayer & Stein, for appellant.

Messrs. Flower, Smith & Musgrave, for appellee.

Mr. Justice Shepard. The contract between the parties, upon which the appellee, as plaintiff, brought suit against the appellant, is as follows:

" This agreement, made and entered into this twenty-first day of June, A. D. 1890, by and between Pierre Wibaux, of Mingusville, in the County of Dawson and State of Montana, party of the first part, and Nelson Morris, of Chicago, in the County of Cook and State of Illinois, party of the second part, witnesseth:

That said party of the first part hereby sells and agrees to deliver unto party of the second part, all of his steers from three years old and up, now on his range between the little Missouri and the Yellowstone rivers, estimated at about thirty-five hundred head, more or less, branded and marked $\underline{W}$ (W bar) on the right side and on both sides; also all of the steers from three years old and up to be delivered by the Green Mountain Stock Ranching Company, under their contract with said Pierre Wibaux, known as the –U– (FUF) brand; and also all of the four year old steers and up, to be delivered by the Powder River Cattle Company, under their contract with said Pierre Wibaux, known as the 76 brand; said steers as above enumerated to be good mer-

chantable cattle, with no stags, cripples or big jaws among them.

And in addition to the above-described steers said party of the first part also hereby agrees to sell and deliver to party of the second part all of his dry cows now on his range above mentioned, and also all the dry cows to be delivered under contract with said Pierre Wibaux by the Green Mountain Stock Ranching Company and the Powder River Cattle Company, all of said cows to be from two years old and up, branded and marked as above-mentioned steers.

The total number of said dry cows estimated at about 3,000 head, more or less.

For and in consideration of the above sale said party of the second part has purchased, and agrees to receive said cattle and pay therefor, as follows: For the steers, as above described, at the price of forty-five dollars ($45) per head; and for the dry cows, as above described, at the price of twenty dollars ($20) per head; the sum of twenty-five thousand dollars ($25,000) to be paid at the execution of this contract, the receipt of which is hereby acknowledged, and the balance on delivery of said cattle on the cars at Mingusville, on the Northern Pacific Railroad, at any time between the 20th day of July and the 10th day of November, 1890. Party of the second part to receive from party of the first part a clear and good bill of sale of said cattle, on the completion of delivery and payment of same.

In witness whereof, the parties to this agreement have hereunto set their hands and seals this 21st day of June. A. D. 1890.

Witnesses:                    PIERRE WIBAUX.    [Seal.]
DAVID TUCKHORN.               NELSON MORRIS.    [Seal.]
WILLIAM COURTENAY.

I. MEYER, agent."

It will be observed that the cattle were to be delivered on board the cars at Mingusville; that all steers were to be good merchantable cattle, with no stags, cripples, or big jaws among them, and were to be three or four years old

and upward, according to their particular brands; and that all the cows were to be two years old and upward, and " dry," and that $25,000 was to be paid as an advance on the contract. It appears in evidence that the amount of this advance payment was arrived at, and paid, at the rate of five dollars a head on the estimated number of steers, 3,500; and two dollars and fifty cents a head on the estimated number of cows, 3,000; and that, as the cattle were delivered and paid for, a credit, or deduction at those rates, was allowed on each head delivered.

Deliveries were begun, under the contract, in the month of July, and continued from time to time during the month of August, so that, prior to September 5, 1890, appellee had delivered, and appellant had received and paid for, 1,293 steers and 3,232 cows. Upon September 5th, 6th, and 7th, appellee delivered to appellant 1,072 steers and 370 cows; these cattle were received by the appellant, shipped to Chicago, and have not been paid for.

On September 9, 1890, appellant notified appellee that he, appellant, would receive no more cattle.

The action is to recover, first, the contract price for the 1,072 steers and 370 cows delivered at the September delivery, and not paid for; second, to recover damages claimed to have been sustained by appellee by reason of appellant's refusal to receive 1,180 steers and 1,127 cows which appellee claims to have had on hand on September 9, 1890, and which he claims appellant ought to have received under the contract. Of these cattle which appellant refused to receive, appellee claims to have resold, between September 9th and November 10th, 708 steers and 762 cows; the balance, viz., 412 steers and 305 cows, he claims to have had on hand on November 10, 1890.

The cause was tried before the court without a jury, and judgment rendered for plaintiff in the sum of $54,515.90. According to the findings of the judge as set forth in the abstract of record, this amount was reached by charging appellant with $45,435, balance claimed for the cattle delivered at the September deliveries, and with $9,532.75, loss on

708 steers and 762 cows shipped and sold by appellee after appellant's refusal to receive further cattle, and with $5,801.56, difference between contract price and market value of 412 steers and 365 cows held on hand November 10th, and allowing appellant a reduction of $6,253.41, by reason of certain of the cattle delivered, certain of the cattle shipped by appellee, and certain of the cattle on hand on November 10th, failing to comply with the contract.

In addition to the special counts upon the contract, there were also filed the common counts, including one for cattle bargained and sold; and the pleas were non-assumpsit and set-off.

The first delivery of cattle seems to have been accepted as satisfactory, and all the cattle delivered prior to September 5, 1890, consisting of 1,293 steers and 3,232 cows, were paid for. The appellant had his agent at Mingusville, on the Northern Pacific Railroad, to inspect the cattle and receive or reject them, as they were tendered by appellee.

Commencing with the second delivery, objections began to be interposed by the agent, on the ground that the cattle tendered did not meet the requirements of the contract, but rejecting some, the main bulk of the cattle delivered prior to September 5th were accepted and shipped to Chicago, either with or without protest, by the agent, and were paid for, as aforesaid.

It is conceded that the market price for cattle of the kind contemplated by the contract suffered a very marked decline after the time of the making of the contract.

The disputes finally culminated on the 9th of September, when appellant refused to receive any more cattle. Prior to this refusal to receive any more cattle, the appellant, by his agent, had received in the month of September, 1,072 steers and 370 cows, which were not paid for.

Deducting from the contract price of these cattle delivered in September, the advance payment per head made thereon, and on other cattle left in the hands of appellee, there remained a balance of $45,435 due appellee, according to the contract.

On certain other cattle, which appellee had at Mingus-
ville, ready for delivery on September 9th, and which because
they were refused acceptance by appellant, the appellee
shipped to Chicago and sold at a loss from the contract price,
the court below allowed appellee $9,532.75. And on still
other cattle which the appellee had on hand on September
9th, and which he claimed were eligible under the contract,
but which appellant would not receive, the court below al-
lowed to appellee the difference between their then value
and the contract price, amounting to $5,801.56.

The court below allowed to the appellant a credit against
these various claims by the appellee of $6,253.41, made up
of allowances for the difference in value between " dry "
cows as contemplated by the contract, and a certain number
of cows which, on reaching Chicago, were found not to be
" dry," and for certain ineligible steers which were included
in those of the September delivery, and for those not deliv-
ered but shipped and sold by appellee.

The questions of fact contested between the parties were
mainly as to whether the cattle delivered in September, and
those on hand ready to be delivered, were up to the contract
requirements, and therefore whether appellant was bound to
pay for them; and also as to whether the cattle which were
delivered prior to September 5th, and paid for, were up to
said requirements. It was claimed by appellant that these
last mentioned cattle which were paid for by him, were not
up to the requirements of the contract, and their deficiency in
that regard was made the subject of set-off and recoupment.
The allowance or credit to appellant made by the court,
already referred to, was in furtherance of this claim by
appellant to the extent that the evidence, in his judgment,
warranted.

The evidence disclosed that a considerable number of both
steers and cows that were delivered were under the age
specified in the contract, but the court below refused to allow
appellant a credit therefor because there was no evidence as
to the value of such as were under age, and held that the
burden of proof was upon the appellee to show their differ-

ence in value from those of the required age, if any there was.

It would too severely tax the limits of an opinion to review the evidence, the abstract of which occupies the most of a volume exceeding seven hundred pages, filed in this court.

From so careful an inspection of the evidence as the importance of the interests involved demands, we are, however, satisfied that the learned judge of the Superior Court before whom the case was tried, came to the correct conclusion as to the controlling facts of the case.

The contention that the obligation of appellant to receive cattle under the contract was limited to the number of cattle estimated "at about thirty-five hundred head (of steers), more or less," and "three thousand head (of cows), more or less," is without merit. Except for the purpose of determining the amount of the advance payment, the expression of the number of head appears to serve no special purpose in the contract. The contract was for "all of his steers," and "all of his dry cows," of general description and particular location.

And the same conclusion might be stated concerning the contention of appellant that the contract was inseverable, and that because some of the cattle were found not to meet the requirements of the contract, therefore no recovery could be had under the contract.

Contracts should receive a reasonable construction. They should be given effect to in accordance with the manifest intention of the parties.

Here was a contract for the sale of a vast number of cattle, herded upon a range containing about 5,000 square miles, and mingled with other cattle of different grades and ages.

It could scarcely have been in the contemplation of the parties to the contract that some cattle varying in age and quality from the specifications of the contract should not become mixed in with the numerous deliveries. Under such circumstances nothing more than restitution might properly be demanded and that was allowed.

Upon the further contention that as · to such cattle as were delivered and did not fulfill the requirements of the contract as to age or as to their quality in other respects, it devolved upon appellee to show their value, we think counsel for appellant misconceive the law. And in the same connection may be considered the further contention by appellant that the burden was upon appellee to show that the cattle delivered in September and not paid for, were of the kind and description called for by the contract, and that appellant was not liable to appellee in damages by reason of appellant's refusal to receive further cattle.

' The question is one of law as to upon whom the burden of proof rested.

The action was two-fold: for cattle sold and delivered, and for breach of contract, viz., for a failure to receive cattle.

For the breach of contract the burden was upon the party alleging it, to wit, upon the appellee, and the court below properly so held, and the evidence was sufficient. But as to the cattle sold and delivered, the appellant sought to recoup damages because of a breach of warranty, and the burden was upon him alleging it, to wit, upon the appellant.

The delivery and acceptance of the cattle were shown, and if there was a warranty of them, it was immaterial whether they were received 'under protest or not, for it is not contended that their acceptance extended so far as to amount to an express waiver of the warranty.

The breach of warranty upon which the right of appellant by way of set-off or recoupment depended, constituted an affirmative defense and must have been made out by a preponderance of evidence.

Assuming that the contract contained a warranty that the steers should be good merchantable cattle, and that both they and the cows should not be under the specified ages, and that the warranty was not waived by the acceptance of the cattle, but survived their acceptance, then, as held in Underwood v. Wolf, 131 Ill. 425, the appellant relying upon a breach of the warranty as a defense, or by way of set-

off, the burden of proof was upon him as to such breach, and as to any damages; and unless he proved such breach and damages by a preponderance of the evidence, he is not entitled to any benefit therefrom.

We might multiply authorities and extend our discussion of this branch of the case, but doing so would add nothing to the certainty of our conclusion.

There are other questions in the case, but it is enough to say that, while there may be minor and technical errors, we think that upon the whole record the appellant has suffered no substantial injustice, except in the matter next mentioned.

Appellee concedes that the Superior Court judge committed an error by way of oversight, in not allowing to appellant the cost of transporting from Mingusville to Chicago, the 259 delivered steers found by him not to fulfill the requirements of the contract, and offers to remit the amount thereof, $1,530.69, from the judgment below, in case we do not, by a final judgment here, allow him the benefit of his cross-errors.

As to the cross-errors assigned by the appellee, we do not understand them to be seriously insisted upon, and do not regard them as important, except as to the refusal of the court to allow interest at the rate of ten per centum under the statute of Montana for the price of the accepted cattle, not paid for, but to which, under the contract, the appellee was entitled to payment when delivered.

By an additional count filed to the declaration, while the cause was on trial, the appellee specially declared upon the Montana statute for interest, and we are unable to see why he was not entitled to recover interest.

The contract was to be performed in Montana; the money was to be paid there on delivery of the cattle there on board the cars; the number of the cattle delivered was an ascertained quantity, and the price per head fixed, and the amount due, a determined sum, and the contract was in writing.

We fail to see why there was not from the time of the delivery a certain sum of money due upon the contract.

The statute of Montana offered in evidence, provides as follows:

" A creditor shall be allowed to collect and receive interest when there is no agreement as to the rate thereof, at the rate of ten per cent per annum, for all moneys after they become due on any bond, bill, promissory note or other instrument of writing," on judgments, on money due on settlement of accounts, and on "money withheld by an unreasonable and vexatious delay."

The statute of Montana is not unlike, in effect, to the interest statute of Illinois, and it would seem as if what was held in the following cases, is applicable: Heiman v. Schroeder, 74 Ill. 158; Downey v. O'Donnell, 92 Ill. 559; United Workmen v. Zuhlke, 129 Ill. 298 (and cases there cited); Heissler v. Stose, 131 Ill. 393; Whittaker v. Crow, 132 Ill. 627.

See, also, the holding of the Supreme Court of Montana in Randall v. Am. F. Ins. Co., Montana, 340.

It is apparent that if interest should be allowed, as claimed, the amount thereof would exceed, by a considerable sum, the error in not allowing the cost of transporting the 259 steers to Chicago.

We ought, if possible, to avoid a reversal and remanding of the cause, and the delay and great expense of another protracted trial below, because we think substantial justice will be best advanced by so doing.

We will, therefore, give to the appellee the option, to be exercised within ten days, of an affirmance of the judgment as it stands, or of an affirmance of the residue after remitting the sum of $1,530.69, or of a new judgment, based on a finding of facts here, for a sum made up by remitting the sum of $1,530.69 from the price of cattle received and not paid for, and adding interest on the residue of that price at the Montana rate to the present time.