# WHEELING

## WALLACE *et al. v.* DOUGLAS *et al.*

### Submitted February 28, 1905.    Decided June 16, 1905.

1. PERSONAL PROPERTY— *Warranty—Burden of Proof.*
     As a general rule, the burden of proof rests on the buyer, who sets up a warranty of quality or soundness, in the sale of personal property, to establish the fact that the warranty was made and that a breach of it has occurred.  (p. 104.)

2. DECREE— *Conflicting Evidence—Reversal.*
     A decree determining a question of fact will be reversed, upon an appeal, where it clearly appears that such decree is against the weight and preponderance of the evidence, but not where the evidence is of such conflicting and doubtful character that different minds and different judges, equally fair, might reasonably arrive at different conclusions from such evidence.  (p. 107.)

Appeal from Circuit Court, Putnam County.

Bill by Charles L. Wallace and others against Oscar Douglas and others.  Decree for plaintiffs, and defendants appeal.

*Reversed and Bill dismissed.*

C. E. HOGG, W. L. HIGGINS and JOHN E. BELLER, for appellants.

BOWYER & GREEN, for appellees.

COX, JUDGE:

In June, 1899, Charles L. Wallace purchased by parol contract from Oscar Douglas a second-hand and well worn traction engine and boiler, at the price of Two Hundred and Eighty Dollars, to be paid in four equal payments in six, twelve, eighteen and twenty-four months, with interest, for

which Wallace and his wife, Frances, executed their notes, secured by a deed of trust bearing date the 10th day of June, 1899, on the engine and boiler purchased, and on 'a tract of land owned by the wife. Default having been made in the payment of some of the notes, Perry Buxton, the trustee named in the deed of trust, upon request of Douglas, gave notice of sale of the trust property and was about to make sale thereof, when Charles L. Wallace and his wife, Frances E. Wallace, filed their bill in equity in this cause against Douglas and Buxton, trustee, alleging the foregoing facts, and, in addition substantially the following: that the purchase of the engine and boiler was made by Wallace from Douglas relying upon certain representations and promises made by the latter as to the quality and soundness of the engine and boiler, constituting a warranty on his part to the effect that said engine and boiler were all right and as good as new, and, that if they were not all right and as good as new, he would make them all right and as good as new; that such representations and promises were repeated to the wife when the notes and trust were executed; that there was a breach of said warranty; that at the time it was made the said engine and boiler were imperfect, out of repair, and would not work as well as a new engine and boiler and were not as good as new; that upon the discovery of the defective and unsound condition of the engine and boiler, the plaintiff, C. L. Wallace, gave notice in writing to Douglas of the misrepresentation of the engine, and that it was then at Frazier's Landing subject to his order, etc.; and praying that the sale by the trustees be enjoined, and that defendant Douglas be restrained from negotiating and transferring said notes and that said notes be cancelled and delivered to plaintiffs, and that the trust be declared null and void and that a release thereof be directed.

Upon this bill a preliminary injunction was awarded, and Douglas filed his answer, denying the representations, promises and the warranty, to which answer there was a general replication. Depositions were taken by both sides, and such proceedings were had in the cause that, upon final hearing, a decree was entered perpetually enjoining the sale under the trust, except as to the engine and boiler in controversy, and restraining Douglas from negotiating the notes, and cancell-

ing the same, and declaring the trust null and void and directing it to be released. From this decree defendant Douglas appealed.

The first question presented is one of fact. Was the sale of the engine and boiler made by Douglas with the warranty alleged in the bill? As a general rule the burden of proof rests on the buyer, who sets up the warranty, to establish the fact that it was made and that a breach of it has occured. *Cook* v. *Tavener*, 41 Ill. App. 642; *Morris* v. *Wibaux*, 47 Ill. App. 630; *Cunningham* v. *Hall*, 4 Allen (Mass.) 268; *McKendry* v. *Sinker*, 1 Ind. App. 263. This was not a sale by sample. The burden of proving the warranty is on the plaintiff. The evidence upon the question of warranty is conflicting. Charles L. Wallace testified substantially that the warranty was made by Douglas, as alleged in the bill, and that it was relied upon by him in the purchase. On direct examination Charles L. Wallace said that his son, John E. Wallace, was present at the time of the purchase. On cross examination he said that there was no one present. His son, if present, was not called as a witness. On direct examination the following question was propounded to Charles L. Wallace: "You state in the bill, your wife, Frances E. Wallace, hesitated about signing the same and asked Mr. Douglas about the boiler and engine. What did she say to Mr. Douglas and what did he say in reply?" To which he answered: "She asked him all about the boiler and he claimed that the boiler was all right and as good as new, that he did not want her to take out the boiler and engine for people to say that they had some old trap or another." The deed of trust and notes were executed at the home of Mrs. Ewers, on the Frazier's Landing side of the river, after the engine and boiler had been taken across the river. On cross examination Charles L. Wallace, when asked, what statements, if any, were made to him or his wife which caused him to execute the notes and deed of trust, said: "Mr. Douglas might have made statements to my wife but he never to me;" and when asked: "Were you present all the time that your wife and Mr. Douglas were together on that day at Mrs. Ewers'?" He answered: "No, sir. I was in the store most of the time." The plaintiff, Frances E. Wallace, testified that just before she signed the notes and deed of trust

Mr. Douglas told her that he had sold Mr. Wallace an engine and boiler and that it was just as good as new, and that he would warrant that it was all right. It will be observed that she did not testify to the further representation alleged to the effect that, if the engine and boiler were not all right and as good as new, Douglas would make them all right and as good as new. The evidence of George Runnels was taken for the plaintiffs, in which he testified to a conversation had with Douglas as to the condition of this engine and boiler anterior to the sale to Wallace, which conversation, so far as we can see, has no connection with the sale to Wallace and is not material in this cause. The defendant, Douglas, in his evidence denied substantially that he ever made any of the representations and promises or the warranty alleged by plaintiffs, either to Charles L. Wallace or to his wife, Frances E. Wallace. The evidence of A. P. Click was taken on behalf of the defendants. Click was called to repair the engine after the contract of sale had been made and before the engine was delivered. Douglas testified that Click was called as a witness to the contract. Charles L. Wallace testified in effect that Click was called as a witness only to that part of the contract indicating the place of delivery. We quote from Click's evidence as follows: "Ques. You may state what, if anything, you may know regarding a contract between C. L. Wallace and Oscar Douglas, in respect to an engine and boiler, made in June, 1899? Ans. Mr. Wallace came to my place, wanted me to come to Mr. Douglas. He said he had partly contracted for that engine of Mr. Douglas, and he wanted me to come in and fetch my tools and help repair the engine. I went and worked a day or so; got up steam, and this bracket and bolts they talked so much about wouldn't work satisfactorily for Mr. Wallace, so he said he wouldn't receive the engine till he got the other necessary repairs. We got the new bracket then, put it on with new bolts in babbitted up boxes, cleaned it up, put water in and raised steam, run it around over the yard there. Everything seemed to be all right. Mr. Douglas then asked Mr. Wallace what he thought about it, and he seemed to think it was all right except one casting that they hadn't got yet. Mr. Douglas says you take the engine and go to work with it, and I will get the other casting for you, and he agreed to do

that. That is all I know about it. Ques. You may state whether or not you were called by Mr. Douglas or Mr. Wallace in the presence of each other about that time as a witness to the contract? Ans. Yes, sir, I was. Ques. You may state which of them called you, and what was stated as the contract and by whom? Ans. Mr. Douglas, I believe, called me. The contract was, Mr. Wallace was to receive the engine as it was; Mr. Douglass to get the missing casting, put it on the boat for him; was to pay in four notes, six, twelve, eighteen and twenty-four months, $280 secured by a deed of trust on real estate." The evidence of James R. Ewers was taken on behalf of the defendants. We quote from his evidence as follows: "Ques. Plaintiffs in their bill state that at the time of the signing of said note and trust deed Frances E. Wallace, one of the plaintiffs, hesitated about doing the same, and would not do so until she asked and inquired of the said Oscar Douglas if the said engine and boiler were all right, and said Douglas, then and there and before she executed said notes and deed of trust, answered her and said that 'they were all right and that he would warrant them as good as new,' you may state what you know about this? Ans. Well, there was no hesitancy on her part in signing said deed of trust, and if such a conversation occurred it was not in my presence." This witness further testified that he did the writing on that occasion, and was the Notary who took the acknowledgment of Wallace and wife to the deed of trust. From the whole evidence it appears that there was no person present when the contract of purchase was made, except Charles L. Wallace and Oscar Douglas. Wallace said there was, and Douglas said there was not a warranty. The evidence of Click, called as a witness to the contract, sustained Douglas. After the engine and boiler had been brought across the river, at the time the notes and trust were executed, Mrs. Wallace said that Douglas represented that he had sold Wallace the boiler and engine, and that it was just as good as new and that he would warrant that it was all right. Mr. Douglas denied this in *toto.* Mr. Wallace did not sustain his wife as to this conversation. On the other hand, witness Ewers, who did the writing and took the acknowledgment, sustained Douglas in his contention that no such conversation occurred. If the

direct evidence stood alone, we must conclude that the plaintiffs have failed to prove a warranty by a preponderance of the evidence. In addition to the direct evidence, there are certain facts appearing, potent in their character, which tend strongly to corroborate the defendant's contention that there was no warranty. First, the price at which the engine and boiler were purchased was not the value of those articles, if they were "all right and as good as new." In other words, the price was not a "sound price," as shown by the evidence. Second, the plaintiff, Charles L. Wallace had an opportunity of examining the engine and boiler before delivery and before the execution of the notes and deed of trust, and, according to the weight of the evidence, did examine them and saw them operated. If his evidence be true, he not only saw them operated before they were delivered to him, but he knew when the trust and notes were executed and delivered that the engine and boiler were not all right and not as good as new. We quote from his evidence given on cross examination as follows: "I saw that it had been used. I saw that it wasn't as good as new. It was not all right prior to the purchase. The bolts was rusted. I wanted to look at the flue-head and crown sheet, and he said it wasn't no use to do that and he objected." Also, "I saw the boiler when fire was put in it, but they had me go down into the field until after the boat whistled for the landing. I came up out of the field. They just let it down to the landing and put it on, is all the running that I ever saw it do. No, sir, it did not appear to work all right;" and when asked: "What appeared to be wrong about it?" He answered: "It didn't work right it didn't seem to me." And, also, when asked: "What seemed to you not to work right," he answered: "The whole thing." These facts seem to us to be conclusive against the claim of a warranty. There are other facts appearing in the record, tending to corroborate defendant's contention, to which we deem it unnecessary to advert. The decree of the circuit court is clearly against the weight and preponderance of the evidence. While conflicting, it is not doubtful. Different minds equally fair could not reasonably reach different conclusions, and while the rule is that we will not reverse a decree determining a question of fact, where the evidence is of such conflicting and doubtful

character that different minds and different judges equally fair might reasonably arrive at different conclusions from it, yet a decree, determining a question of fact, will be reversed where it clearly appears to be against the weight and preponderance of the evidence.

For the reasons stated, the decree of the circuit court of Putnam county, entered in this cause on the 2nd day of October, 1903, is reversed, and the plaintiffs' bill is dismissed without prejudice to defendants to enforce the deed of trust and the collection of the notes mentioned and referred to in the plaintiffs' bill.

*Reversed.*