SUPREME LODGE OF ANCIENT ORDER OF UNITED WORKMEN *et al.*

*v.*

FLORENTINA ZUHLKE.

*Filed at Ottawa June 15, 1889.*

1. PLEADING AND EVIDENCE—*under stipulation as to evidence under general issue.* In an action of assumpsit against several branches of a benevolent society, including the order itself, upon a certificate of membership in the nature of a policy of life insurance, the defendants filed the general issue, not verified by affidavit, and it was stipulated between the parties that the defendants might introduce proof of all matters under the plea, which they might do had the same been specially pleaded : *Held,* that the language of the stipulation was not broad enough to cover pleas verified by affidavit and in abatement, which are required by sections 33 and 35 of the Practice act.

2. SAME—*action against several—cause of action against all—of the pleadings required.* In order to recover in an action *ex contractu* against several, a cause of action must be established against all the defendants, even though none of them may have put their joint liability in issue by plea in abatement, or a plea in bar, verified by affidavit. In such case no recovery can be had, even in the absence of such a plea as is required by section 35 of the Practice act, if the evidence shows affirmatively that the defendants are not liable jointly.

3. BENEFIT SOCIETY—*expulsion of a member, as a defense against the beneficiary—notice—insanity of member.* The expulsion of a member of a benevolent society, when the tribunal had no jurisdiction for want of proper service on him, and while he is insane, so as not to be capable of giving jurisdiction by consent, is void, and is no bar to a suit by the beneficiary upon the certificate of membership, whereby the society bound itself to pay the beneficiary a certain sum of money on such member's death.

4. If the society relies on an expulsion of a member in his lifetime, as a defense to an action brought upon his certificate of membership in the nature of a life policy of insurance, it must prove such expulsion by its records, and the proceedings must show that such member was duly served with notice, or that the society acquired jurisdiction of the person by consent, and proceeded according to its constitution and by-laws ; and if a voluntary appearance is relied on, it must not appear that he was incapable of waiving the necessary steps by reason of insanity.

5. An expulsion resting on the appearance of the member without the service of notice on him of the charges, and based on his admission

of their truth, when, owing to his insanity, he had not mental capacity to understand the force and effect of his acts and admissions, can not be sustained by the court as a defense to an action on a certificate of membership for the insurance money therein promised to the beneficiary.

6. APPEARANCE— *admissions* — *mental capacity.* Where a person is brought into court, not by service of process, but by an entry of his appearance, he must be intelligent enough to comprehend the meaning of his act; and if he admits a fact to be true, such admission can not bind him, unless he has mental capacity to understand its force and effect. This rule applies to the judgment of a benefit society in the expulsion of a member.

7. INTEREST— *on a benefit certificate, in the nature of a policy of life insurance.* The beneficiary of a certificate of membership in the nature of a policy of life insurance is entitled to six per cent interest on the sum agreed to be paid, from the date of notice of the death of the assured.

8. PRACTICE IN THE SUPREME COURT— *entering the proper judgment.* In an action on a policy of life insurance, the court below rendered judgment in favor of the plaintiff for the amount named in the policy, without interest. On appeal by the defendant, the appellee assigned as a cross-error the refusal to allow interest from the date of notice of the death of the assured. This court, on sustaining the cross-error assigned, rendered judgment for the plaintiff for the sum due, with six per cent interest.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

Mr. JOHN P. AHRENS, for the appellants:

Appellants are not jointly liable on the beneficiary certificate sued on. If there be any liability, it is on the part of the grand lodge, only.

In benevolent associations their by-laws and constitutions enter into and become a part of the contract, the same as if written in the certificate. *Limeral* v. *Dubuque,* 18 Iowa, 319; *Walsh* v. *Insurance Co.* 30 id. 103.

The certificate shows that the grand lodge alone is the party liable, and hence it was not necessary to file a plea, verified by affidavit, denying joint liability. (*Davison* v. *Hill,* 1 Bradw.

70.) Neither is such a plea necessary when it appears, from the defendant's evidence, that there is no joint liability. *Garland* v. *Peeney,* 1 Bradw. 108; *Rosenberg* v. *Barrett,* 2 id. 386.

If Edward Zuhlke was not insane during the proceedings for his expulsion, and if the proceedings were in substantial compliance with the laws of the order, the expulsion worked a forfeiture of all claims to the beneficiary fund, and is a bar.

Proceedings in orders of this kind, had in substantial compliance with their laws, and regular and in good faith, are final, and the merits of the proceedings can not be inquired into. *Dolan* v. *Court Good Samaritan,* 128 Mass. 437; *Black and White South L.* v. *Vandyke,* 2 Whart. 308; *Toram* v. *Howard Association,* 4 Pa. St. 519; *Anacostee Tribe of Red Men* v. *Murbach,* 13 Md. 91; *Karcher* v. *Knights of Honor,* 137 Mass. 368; *Grosvenor* v. *U. S. of Believers,* 118 id. 78; *White* v. *Brownell,* 2 Daly, 329; *Benton* v. *St. George Society,* 28 Mich. 261.

The act of expulsion was like a judgment of a court of law, and even if Zuhlke were insane at the time of his trial and expulsion, a judgment against a lunatic is not void, and can not be attacked collaterally. Freeman on Judgments, sec. 152; Ordronanx on Judicial Aspect of Insanity, 288, 289; *Cripper* v. *Culver,* 13 Barb. 424; *Stenberg* v. *Schoolcraft,* 2 id. 153; 8 id. 552; *Robertson* v. *Lain,* 19 Wend. 650.

Messrs. Cameron & Hughes, for the appellee:

None of the defendants put in issue their joint liability, by a verified plea. Rev. Stat. 1874, secs. 33, 35.

By virtue of the statutes and of the common law, as to corporations sued, the plaintiff was not required to prove, first, that defendants were corporations; or, second, that they were jointly liable in the suit; or, third, that they executed or authorized the execution of the instrument sued on. *Dwight* v. *Newell,* 15 Ill. 333.

A judgment is void for all purposes, unless the court had jurisdiction of the person of the defendant and of the subject matter. *White* v. *Jones,* 38 Ill. 159.

A party can not be deprived of property or other rights except by judicial decision, after being duly notified, and after reasonable time and opportunity to defend. *Clark* v. *Lewis,* 35 Ill. 421; *Yates* v. *Milwaukee,* 10 Wall. 491.

An insane person can not give jurisdiction, even to a court of general jurisdiction, to pronounce judgment for or against him while he remains in that condition. *Titcomb* v. *Vantyle,* 84 Ill. 374; *Bradford* v. *Abend,* 89 id. 78.

Appellee is as much entitled to the interest ($532.66) as she is to the principal ($2000.) To give her one and deny the other is to fail to do her complete justice. She is entitled to the interest claimed. Laws of 1879, p. 184, sec. 2; *Insurance Co.* v. *Gould,* 80 Ill. 388; *Insurance Co.* v. *Robinson,* 98 id. 324.

This court has the power to enter the judgment prayed for. 2 Starr & Curtis' Stat. p. 1838, sec. 80.

The Supreme Court has held, over and over again, that where the court below, without a jury, entered a judgment for the wrong amount, and they could ascertain the correct amount by computation, then the Supreme Court could and would enter an original and final judgment for the correct amount. *Wilmans* v. *Bank,* 1 Gilm. 669.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is an action of assumpsit brought on March 24, 1885, in the Circuit Court of Cook County, by the appellee against the Supreme Lodge of the Ancient Order of United Workmen, the Grand Lodge of the Ancient Order of United Workmen of Illinois, Wicker Park Lodge No. 104 of the Ancient Order of United Workmen, and the Ancient Order of United Workmen, the appellants. The case was tried before the Circuit judge without a jury, the jury being waived by agreement. The trial

resulted in a judgment in favor of the plaintiff, which has been affirmed by the Appellate Court. Appellants prosecute their further appeal to this Court.

The suit is brought upon a beneficiary certificate, dated in January, 1881, which certifies that Edward Zuhlke, the deceased husband of the appellee, "is entitled to all the rights and privileges of membership in the Ancient Order of United Workmen, and to participate in the beneficiary fund of the order to the amount of $2000.00, which sum shall, at his death, be paid to Florentina Zuhlke, his wife." Zuhlke died on October 15, 1884. The amended declaration, filed on October 28, 1885, consists of two special counts, which aver that the defendants issued, or caused to be issued, the certificate sued upon to Edward Zuhlke. All the defendants by their attorney filed the plea of the general issue. It was stipulated between the parties, that the defendants might "introduce all matter of evidence on the trial * * * under the plea of general issue, which they might do, had the same been properly specially pleaded."

The first point made by the appellants is that they are not jointly liable on the certificate, and that it was error to enter judgment against them jointly.

Section 33 of the Practice Act provides, that "no person shall be permitted to deny on trial the execution * * * of any instrument in writing, whether sealed or not, upon which any action may have been brought, unless the person so denying the same shall, if defendant, verify his plea by affidavit." The plea of the general issue was not verified by affidavit by the defendants or either of them. When the certificate was introduced by the plaintiff upon the trial below, the defendants made no objection to its introduction.

Section 35 of the Practice Act provides, that "in actions upon contracts, express or implied, against two or more defendants as partners or joint obligors or payors, whether so alleged or not, proof of the joint liability or partnership of the

defendants   *   *   *   shall not, in the first instance, be required to entitle the plaintiff to judgment, unless such proof shall be rendered necessary by pleading in abatement, or unless the defendant shall file a plea in bar, denying the partnership or joint liability or the execution of the instrument sued upon, verified by affidavit." In this case, the defendants did not, either or any of them, plead in abatement, or file a plea in bar, denying their joint liability or the execution of the certificate, verified by affidavit. The language of the stipulation is not broad enough to cover the pleas verified by affidavit and in abatement, which are required by said sections 33 and 35.

Appellants invoke the well known principle that, in order to recover in an action *ex contractu,* a cause of action must be established against all of the defendants, *(Griffith v. Furry,* 30 Ill. 251; *McLean v. Griswold,* 22 id. 219; *Goit v. Joyce,* 61 id. 489); and they claim, in view of this principle, that the provision contained in section 35 as above quoted does not prevent the defendants or either of them from questioning their joint liability without such plea in abatement or verified plea, but merely relieves the plaintiff of the common law burden of proving such joint liability in the first instance. It is, therefore, contended, that no recovery can be had, even in the absence of such a plea as is required by said section, if the evidence shows affirmatively that defendants are not jointly liable. We think that the contention of the appellants in this regard is correct, but they had the full benefit of it upon the trial below. The trial court held as law in the decision of the case the following proposition submitted by the defendants: "That, notwithstanding there is no plea in this case denying the joint liability of the defendants, if it appears from the evidence in the case that the defendants are not jointly liable, there cannot be a finding or judgment against them jointly." Holding the law to be as thus stated, the circuit court must have found the fact to be that defendants were jointly liable.

The judgment of the Appellate Court affirming the finding of the Circuit court is conclusive upon this question of fact so far as we are concerned.   After a careful examination of the constitutions of these various organizations, and of the certificate, and other documentary and oral proofs in the record, we cannot say that there is no evidence tending to establish such joint liability.   The defendant corporations all seem to be parts of one general system, the Supreme Lodge being apparently an aggregation of the Grand Lodges, the Grand Lodges working under the authority of the Supreme Lodge, the subordinate Lodges, like the Wicker Park Lodge, being under the jurisdiction of the Grand Lodges, and the rights and privileges of membership in either or all of the Lodges being the same as those rights and privileges in the Ancient Order of United Workmen.   We do not think the first point is well taken.

It is next urged by the appellants that no recovery can be had because Edward Zuhlke was in his life time expelled from the Grand Lodge.   It appears, that the deceased was taken sick with "degeneration of the brain" on June 16, 1884, and that after that date he was entitled to the benefit of the sick fund.   About June 27, 1884, it was charged against him, that he had made false statements in regard to his health when he joined the Lodge in December, 1880, or January, 1881, and also that he had attempted to commit suicide on June 21, 1884. Proceedings for his expulsion, based mainly upon the charge of false statements made about his health when he first became a member, were begun about the 27th of June, 1884, and resulted in his expulsion on August 15, 1884.

Upon the trial before the Circuit Court, the plaintiff introduced evidence tending to show that the deceased was insane during the proceedings for his expulsion.   The defendants introduced testimony tending to show that he was sane at that time.   That he was insane is a fact which is established by the judgment of the Appellate Court.   But the trial court modified several of the propositions submitted to it by the

defendants so as to hold that the judgment of expulsion and the proceedings therefor were no bar to a recovery, if the deceased was insane when the proceedings were conducted and the judgment was rendered. Such modification is claimed by the appellants to be error. They insist that, by reason of such expulsion, there can be no recovery in this case even if the deceased was insane during the proceedings, which resulted in expulsion.

If the tribunal, which expelled Zuhlke had no jurisdiction, then the judgment of expulsion was void. Such judgment, as presented by this record, must be regarded as a consent judgment, or a judgment by confession. In the first place, whatever jurisdiction was acquired over the person of the deceased was so acquired by his appearance, and not by the service of process or notice upon him as prescribed by the constitution of the Lodge. Section 2 of article 16 of the constitution provides for a special committee of three members to investigate the alleged offense, and to prefer charges against the accused member, if they think there are grounds therefor, and to take charge of the prosecution on the part of the Lodge. Section 3 provides that the charges so preferred "shall be read in open Lodge at the next stated meeting thereafter, and the Recorder shall immediately furnish a copy thereof under the seal of the Lodge to the member so accused, and at the same time cite said member to appear before the Lodge at the second stated meeting thereafter, when the matter will be taken up for consideration, at which time, if the charges are not withdrawn, a committee of five members shall be appointed." Section 4 provides, that the charges shall be referred to this committee of five, and that they shall examine the party, witnesses, etc.

A record is produced, which purports to be full and complete, of the proceedings of expulsion before the Lodge, and also before the trial committee of five members. It nowhere appears, that a copy of the charges against him was furnished to Zuhlke, or that he was cited to appear before the Lodge

20—129 ILL.

*at the second stated meeting,* or that he ever appeared before the Lodge at all. On August 1, 1884, there was a meeting of the Lodge, at which the charges were preferred, and, *at the same meeting,* a trial committee of five was appointed in the absence of Zuhlke, and without any citation to him to appear, and without any notice to him of the charges. On the same day the trial committee met and resolved to hear evidence on August 5, 1884, and instructed their secretary to summon Zuhlke to appear on that day. On August 5, 1884, the committee of five met and examined witnesses. Zuhlke appeared at this meeting of the committee and was questioned by them, and then for the first time the charges were read to him. It is not shown whether he had been summoned by the secretary or not. Some testimony was also taken on August 7, but Zuhlke does not appear to have been present. At another meeting of the committee on August 14, 1884, Zuhlke was present, and the testimony was read over to him, and he was asked some questions in regard to it. He is not shown to have been present on any other occasions than at the meetings of the committee on the 5th and 14th days of August. The report of the committee sustaining the charges was dated August 14, and presented to the open Lodge, and adopted on August 15 in the absence of the accused and of his counsel. The only counsel, which the deceased had, was one Roth, a saloon-keeper, who is not shown to have been present at any time except before the committee on August 14.

In the second place, the judgment of expulsion, which was nothing more than the adoption by the Lodge of the report of the committee of five, is based mainly upon the admissions of the accused as to the truth of the charges against him. On August 5, he admitted that he had had spells of sickness as far back as 1878 and 1879. On August 14 he made the same admissions, and at that time Roth declined to oppose his expulsion for the alleged reason, that he had admitted the charge to be true. The committee in their report find "brother

Ed Zuhlke guilty of above mentioned charges, *while* (which) *brother Zuhlke does not dispute.*"

It thus appears, that the judgment of expulsion rests upon the appearance of the accused, and upon his admissions of facts. Appearance and admissions involve the element of consent. If a man is brought into court, not by service of process, but by an entry of his appearance, he must be intelligent enough to comprehend the meaning of his act. If he admits a fact to be true, such admission cannot bind him, unless he has mental capacity enough to understand its force and effect. So far as this court is concerned, it is an established fact, that the accused entered his appearance in the expulsion proceedings and therein admitted the truth of the charges against him while he was insane. In *Bradford* v. *Abend,* 89 Ill. 78, we said: "the bill was filed in the name of the insane wife against her husband for divorce. * * * It is a matter of no consequence, who advised the filing of the bill. * * * Being insane she could give no consent to the proceedings had in the divorce case, and hence everything that was done in her name was invalid. Consent involves an act of reason, and when one is bereft of reason it follows there can be no consent given that comes from reflection." This language is strictly applicable to the relations of the deceased Zuhlke to the proceedings for his expulsion. Being insane he was incapable of giving that consent, upon which alone those proceedings can rest for their validity. We are of the opinion that the trial court committed no error in modifying the propositions of law, submitted to it, in the respect above indicated.

The judgment below was for the $2000.00 named in the certificate without interest. The appellee assigns as cross-error that she was allowed no interest. It is in evidence, that on October 24, 1884, appellee gave the appellants written notice of her husband's death on October 15, 1884, and made a written demand for the payment of the $2000.00. We know of no reason why she is not entitled to interest from the date

of such notice at the rate of six per cent per annum. (*Knickerbocker Ins. Co.* v. *Gould,* 80 Ill. 388; *Mass. M. L. Ins. Co.* v. *Robinson,* 98 id. 324). The judgments of the Circuit and Appellate Courts are correct as far as they go, but they should have allowed interest. The interest on $2000.00 at the above rate from October 24, 1884, to the present term of this Court is $553.33. Judgment is therefore hereby rendered in this Court in favor of the appellee for $2553.33.

*Judgment affirmed and modified.*