190    APPELLATE COURTS OF ILLINOIS.

VOL. 100.] Sup. Lodge, Order of Mutual Protection, v. Gelbke.

---

## Supreme Lodge, Order of Mutual Protection, v. Fredericka Gelbke.

1. LIFE INSURANCE—*Suicide, a Question of Fact.*—The fact as to whether an insured person committed suicide, and also as to whether he was sane or insane at the time he committed the act of self-destruction, are questions of fact for the determination of the jury.

2. SUICIDE—*The Offense at Common Law.*—Suicide was a crime at common law, and was punished by forfeiture of goods and an ignominious burial.

3. SAME—*How Considered in the United States.*—In the United States suicide is not considered as a crime, and the meaning given to the term in criminal law appears to have been abandoned in the construction of policies of life insurance.

4. SAME—*The American Doctrine in Insurance Law.*—In America, if, at the time of the suicidal act, the assured was so affected with insanity as to be unconscious of the act, or of its physical effect, or if he was driven to its commission by an insane impulse, which he had not the power to resist, the act of self-destruction is regarded as the result of an accident, or of some irresistible external force.

5. SAME—*Effect of a Verdict Finding an Insured Person Insane.*— In an action on a policy of life insurance, where the defense of suicide is interposed by the insurer, a verdict that the insured was insane at the time he committed the act of self-destruction, is in effect an affirmative finding that he did not intentionally take his own life.

**Assumpsit,** on a policy of life insurance. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Affirmed. Opinion filed February 21, 1902.

CRATTY, JARVIS & CLEVELAND, attorneys for appellant.

E. F. HERRMANN, J. KENT GREEN and E. M. WINSTON, attorneys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court.

The membership certificate upon which this suit was brought, is as follows:

"SUPREME LODGE, ORDER OF MUTUAL PROTECTION.

This certificate, issued by the Supreme Lodge, Order of Mutual Protection,

Witnesseth, that Louis Gelbke, of Lake View, Ill., has been accepted as a member of the Order of Mutual Protection, upon the faith of the representations contained in his application to the order, and medical examination, and that the supreme lodge will, upon his death, provided he has, while a member, complied with the charter, constitution, laws, rules and regulations of the order, pay from the Widows and Orphans' Protection Fund, the amount of one assessment, not to exceed, however, the sum of two thousand dollars, to his wife, Fredericka, unless this certificate should be by him revoked.

The express condition upon which this certificate is issued, is that the rights of the above named beneficiary or beneficiaries shall be determined by the charter, constitution, laws, rules, and regulations of the order in force at the time that the sum due hereunder is payable.

In witness whereof, the Supreme Lodge, Order of Mutual Protection, has caused this certificate to be signed by the supreme president and its seal to be hereto affixed and attested by the supreme secretary.

Done at St. Louis, Mo., May 16, 1888.

HENRY SCHWARTZ, Supreme President.
Attest: G. DEL VECCHIO, Supreme Secretary."

At the time Gelbke became a member, and when the certificate was issued to him, there was no provision of the society against death from suicide. The first action of the supreme lodge having reference to such cases was in 1891, when a by-law was enacted, as follows:

" And provided, further, that no benefit shall be paid on account of any member who obtained membership by fraudulent means, nor if said death is caused by the suicidal act of the deceased while sane or insane, within three years from the date of his benefit certificate."

The next action taken by the supreme lodge was at the meeting of September 3, 1895, at which the by-laws and constitution were revised, and it was provided as follows:

" Death Claims Must be Valid.—A death claim which is not valid shall not be paid. No liability shall exist against the supreme lodge, and no benefit shall be paid on account of the death of a member　*　*　*　(5) if the death was due to the voluntary or involuntary suicidal act of the deceased member, whether he was at the time sane or insane."

On August 26, 1897, at a special meeting, the above paragraph 5 was amended so as to read as follows:

*　*　*　" if the death cause is due to the voluntary or involuntary suicidal act of the deceased member, whether he was at the time sane or insane, and whether he committed the act knowingly or unknowingly; provided, however, that in such a case there shall be refunded to the beneficiary a sum equal to the amount which such a member shall have paid to the order for assessments, and no more."

Again, on September 8, 1897, another and final amendment in reference to claims in the cases of suicides was adopted, as follows:

*　*　*　" if the death was due to the suicidal act of the deceased member, whether he was at the time sane or insane; provided, however, that in such a case there shall be refunded to the beneficiary the sum equal to the amount which such a member shall have paid to the order for assessments, together with interest at the rate of four per cent on said assessments paid by him, and no more."

All of the foregoing by-laws were adopted after Gelbke took out his certificate of membership, and were the subject of pleas by the appellant.

For failure to pay assessments called in July, 1897, Gelbke was suspended, and on representations contained in his application for reinstatement, dated September 27, 1897,

he was reinstated. In his application for reinstatement Gelbke represented, among other things, as follows:

"In consideration of my being reinstated as a member I further agree to be bound by the laws of the order now in force, or as they may be hereafter amended or enacted, and that should my disability or death be caused by or result directly or indirectly * * * by my own suicidal act, sane or insane, * * * neither myself nor any of my beneficiaries shall be entitled to participate in the Widows and Orphans' Protection Fund, * * * nor shall my beneficiary or beneficiaries have any claim * * * in case my death shall result from or depend upon any disease or injury which I may have had, acquired or received prior to my being re-admitted as a member in your order, if re-admitted to beneficiary membership and my beneficiary certificate restored to me."

Mr. Gelbke died May 24, 1898, and on May 30, 1898, Mrs. Gelbke, the beneficiary named in the certificate of membership, appellee, gave the required notice of his death to the order, and her claim thereunder, in which she states the cause of death as follows: "The cause of death was from poison taken while temporarily insane, as shown by the enclosed certificate of death issued by the board of health, and by certified copy of coroner's inquest hereto attached."

The claim was presented to the executive committee July 13, 1898, and was rejected on the ground that Gelbke's death was due to his suicidal act, and they notified the claimant of their conclusion, and that there was due to her the amount of assessments paid in by Gelbke, $178.50, with interest at the rate of four per cent, for which amount they returned to her a voucher. Mrs. Gelbke refused to accept the voucher, and thereupon this suit was begun August 28, 1898.

The case was submitted to a jury, and judgment was entered on their verdict for $2,165.

The issue presented by every one of appellant's pleas was that of suicide of the member. Full evidence was heard upon the issue, and the jury were correctly instructed on it.

194    Appellate Courts of Illinois.

Vol. 100.] Sup. Lodge, Order of Mutual Protection, v. Gelbke.

The verdict of the jury in favor of appellee, amounted to an affirmative finding that her husband was insane, and that he did not intentionally take his own life. That was the issue made on each special plea, and the jury decided it adversely to the appellant. With a failure by the defendant on that issue, all other questions, being merely incidental to that one, became immaterial. Neither side could have recovered on any theory of the case without a finding in their favor of that issue. In the case of Grand Lodge I. O. M. A. v. Wieting, 168 Ill. 408, Mr. Justice Boggs, speaking for the court, said :

" The acts and conduct and delusions, if any, of the person whose mental condition is the subject of inquiry, including the act of self-destruction and the attending circumstances, are proper for consideration in determining the fact. * * * Whether insane or not is a question of fact, in determining which it is competent to consider the acts and conduct of the party in question, and no reason is perceived why the act of self-destruction, the manner and mode thereof, and all attending circumstances, should be excluded from consideration. * * * Suicide, at common law, ranked as a crime, and was punished by forfeiture of goods and an ignominious burial, and many authorities, in view of this fact, have construed clauses in policies exempting the insurer from liability if the assured should ' commit suicide ' as effective only when the circumstances of the self-killing and the mental condition of the assured were such it would have been deemed at the common law he had committed the crime of self-murder. * * * In America, however, self-destruction is not a crime, and the meaning given to the word ' suicide ' in criminal law seems to have been abandoned in the construction of insurance policies, and the phrase ' commit suicide ' has been declared synonymous with the other phrases employed to convey the idea of voluntary, intentional self-destruction."

And the court, in the same case, goes on further to say :

" It is believed there is a substantial concurrence of judicial decision in America on the proposition that if, at the time of the suicidal act, the assured was so affected with insanity as to be unconscious of the act or of the physical effect thereof, or was driven to its commission by an insane impulse which he had not the power to resist, the act of

self-destruction is regarded as though it were the result of accident or of some irresistible external force."

The question of suicide was submitted to the jury in accordance with the views so expressed, and the instructions that were given on that subject fully and correctly stated the law. Nelson v. Equitable Life Assurance, 73 Ill. App. 133. The effect of the verdict was an affirmative finding that Gelbke was at the time of his death insane, and that he did not intentionally take his own life. All other questions hinged upon this one. It could make no difference whether the amendments to the by-laws were properly made or not, with the fact established by the verdict that Gelbke was insane at the time of his death and did not intentionally take his own life.

If upon the one issue that was materially essential to the appellant's case the appellant was unable to prevail, the verdict must be considered as decisive.

As is well said by appellee, the appellant could be no worse off if "defeated on a dozen essential points, than when the one essential issue is presented and it is beaten upon that."

The evidence also tended to show that Gelbke's death was occasioned by accident in mistaking the poison he took, for brandy. We think there was evidence enough to sustain the verdict on that ground, as well as on the other.

"It seems to be fairly settled that in the absence of satisfactory evidence as to the death being accidental or suicidal, the presumption is in favor of the theory of accidental death." Mutual Life Ins. Co. v. Wiswell, 56 Kans. 765.

The effect of the coroner's inquest, which was produced by appellee in accordance with a rule of the order, did not estop her to show the truth. Modern Woodmen v. Davis, 236.

But it is claimed fraud was practiced by Gelbke in the representations made by him in his original application for membership. And this is because he answered "No," to a printed question as to whether he had ever been subject to any of forty named disorders or diseases, of which the one referred to is, "sunstroke." "Sunstroke," is defined to be

acute prostration from excessive heat of weather; and the same effects may be produced by heat which is not of solar origin.   Century Dictionary.

The evidence of the falsity of his answer consisted in hearsay evidence—that he told his wife he was sunstruck the first summer he was in this country, and about two years before he was married.   They were married in August, 1884.   It was not shown that his attention was in any way called particularly to the question, and there was no evidence that he was "subject" to sunstroke at the time of his application.

We know of no authority that holds a question like the one referred to, should be extended beyond its literal meaning; and therefore when the question if Gelbke had "ever been subject" to sunstroke, was answered by him "No," it was not answered falsely.

Interest was, we think, properly allowed.   Supreme Lodge United Workmen v. Zuhlke, 129 Ill. 298; Grand Lodge, etc., v. Bagley, 164 Ill. 340.

We have considered the case on the theory that there can be no judgment for the appellant unless the issue as to suicide, which was made by the pleadings an essential element of every defense interposed by the pleas, be found in its favor.

We think the verdict on that issue was properly found for the appellee, under the evidence and instructions, and therefore affirm the judgment.   Affirmed.