## Golden Grain Milling Company, Appellee, v. St. Louis, Springfield & Peoria Railroad Company et al., Appellants.

1. CARRIERS—*contract liability for damage to goods in transit.* A railroad upon which is located the consignor's factory and from which cars for a shipment of goods were ordered and received by the consignor, and upon the tracks of which the cars were loaded and to which the consignor delivered the cars for shipment to the consignee, and which carried them to the junction of its tracks with those of connecting carriers to which it delivered them for carriage and delivery to the final carrier which delivered them to the consignee and which initial carrier the evidence tends to show was the road with which the consignor made the contract of carriage, is the initial carrier, upon which alone falls all liability in assumpsit for damage in transit to the goods.

2. CARRIERS—*liability of connecting carrier for damage to goods in transit.* Connecting carriers are not liable, either in tort or in assumpsit, for damage to goods in transit where the evidence shows that they delivered the goods to a final carrier for delivery to the consignee, that although the goods were in a damaged condition after delivery to the consignee as the result of the leaking and defective condition of the cars, the cars were in sound condition when delivered to the consignor to be loaded and that the connecting carriers caused them to be inspected at different times during transit and found them to be sound but the goods heating from spontaneous causes and where there is no evidence of negligence by such connecting carriers.

3.  APPEAL AND ERROR—*effect of failure to file plea denying joint liability as bar to raising question on appeal.* Connecting carriers may, on appeal from a joint judgment against them and the initial carrier for damage to goods in transit, attack such judgment on the ground that there is no joint liability, even though they filed no plea denying joint liability, where the evidence shows no liability against such connecting carriers.

4.  CARRIERS—*right of connecting carrier to have given special interrogatory excluding it from liability.* A connecting carrier, sued jointly with the initial carrier for damage to goods in transit, is entitled to have submitted to the jury a special interrogatory as to whether the damage resulted from defective conditions of the cars in which the goods were shipped which existed at the time the cars were loaded, such connecting carriers being liable only for their own negligence in the carriage of the goods.

5.  CARRIERS—*propriety of instruction limiting liability of connecting carrier for damage to goods in transit.* A connecting carrier, sued jointly with the initial carrier, for damage to goods in transit, is entitled, even in a tort action, to an instruction relieving it from liability if the jury find the cars in question to have been leaky when the goods were loaded, and that such connecting carrier could not have discovered such condition by reasonable inspection at the time the cars were delivered to it and it had nothing to do with the furnishing of the cars to the consignor or with their selection and inspection at the time they were loaded.

Appeal from the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding. Heard in this court at the March term, 1922. Reversed and remanded. Opinion filed July 11, 1922.

TERRY, GUELTIG & POWELL, for appellants Illinois Traction System; BURTON & HAMILTON, of counsel.

WARNOCK, WILLIAMSON & BURROUGHS, KRAMER, KRAMER & CAMPBELL and R. H. WIECHERT, for appellant Davis, Agent.

C. E. POPE, for appellee; WINSTON, STRAWN & SHAW, of counsel.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This is a suit brought by the Golden Grain Milling

Company, appellee, against the St. Louis, Springfield & Peoria Railroad Company, St. Louis & Northeastern Railway Company, St. Louis Electric Terminal Railway Company, Danville & Edwardsville Terminal Railway Company and John Barton Payne, Director General of Railroads and Federal Agent for Southern Railroad Company. The first four companies named comprise the Illinois Traction System and will be hereafter referred to under that name. Before the trial of the case "James C. Davis, designated Agent under the U. S. Transportation Act of 1920," was substituted as a defendant for John Barton Payne, Director General of Railroads. The suit was brought to recover damages which appellee claims it sustained by reason of certain stock food which it had shipped to Morris & Company of Peoria, Illinois, being damaged while in transit on account of the cars in which it was shipped leaking and thereby causing the food to become wet and heated. It seems that appellee was under contract with Morris & Company to ship it about fifty carloads of this feed, and that it usually shipped the same two carloads at a time. The declaration consists of twelve counts covering four shipments as follows: April 12, 1919, April 30, 1919, May 5, 1919 and May 15, 1919. There are three counts covering each of the four shipments. The first count as to each shipment alleges, in substance, that on the date specified the defendants were common carriers of goods and chattels for hire from East St. Louis to Peoria, Illinois; that plaintiff delivered the feed to defendants, who, for a certain reward, promised to safely and securely carry and convey the same to Peoria, Illinois; but not regarding their said promise did not safely or securely carry and convey the feed and in consequence thereof and by reason of the default of the said defendant in their said premises as aforesaid, the said plaintiff suffered and sustained great and serious loss, etc. The second count alleges, following the formal

allegations, that the defendants did not safely carry as promised but so carelessly and negligently behaved in that behalf that by and through such negligence the plaintiff suffered loss. The third count charges that defendants promised to carry within a reasonable time and not regarding such promise so carelessly and negligently behaved and conducted themselves in that behalf that by and through said negligence the plaintiff suffered great loss. The counts covering each shipment are substantially the same except as to dates and amounts. The defendant, Davis, agent for the Southern Railroad Company, filed a plea of the general issue. The defendant, the Illinois Traction System, filed a plea of the general issue with notice of special defenses, as follows: (1) That the damage to the feed was caused by it becoming heated as a result of its own ingredients; (2) that the damage was caused by the fault of the plaintiff who inspected all the cars before they were loaded and if such cars were defective plaintiff should have discovered that fact; and (3) that the Illinois Traction System did not furnish the cars and had nothing to do with the selection or inspection of the same. The trial before a jury resulted in a verdict against all the defendants for the sum of $1,341.91, and from the judgment entered on that verdict they have appealed.

It is claimed by attorneys for appellants comprising the Illinois Traction System that this suit is an action in assumpsit and that the Southern Railroad Company was the initial carrier and the only defendant against whom an action in assumpsit can be maintained. Attorneys for appellee contend that this is an action in tort and can therefore be maintained against all of the railroads who handled the shipment. A determination of the questions raised by these claims in our opinion will dispose of this case without a minute consideration of all the other questions raised. It appears that the plant of appellee, at which the feed in ques-

tion was manufactured, is located on the line of the Southern Railroad Company and the feed was loaded at that place. The Southern Railroad connects with the Illinois Traction System at Venice about three miles from appellee's plant. This latter line delivered the shipments to the Peoria & Pekin Union Railroad Company at Peoria, which in turn delivered them to the consignee, Morris & Company. The evidence of the traffic manager for appellee showed that all these cars were ordered from the Southern Railroad Company but it is not clear whether a bill of lading was issued on all or any of these shipments. Appellee presented a statement of claim against the Illinois Traction System for each of the shipments, in which it was stated that a bill of lading was issued on each shipment by the Southern Railroad Company. These statements of claim were introduced in evidence. No copy of a bill of lading or of any contract sued upon was attached to the declaration. The sales manager of appellee testified that no bills of lading were issued. He said, however, his company was given a receipt on each shipment but did not state by what railroad company. It is clear that the cars were furnished by the Southern Railroad Company and loaded on its tracks and were by it delivered to the Illinois Traction System at Venice, which company in turn delivered them to the final carrier at Peoria, which was not, however, made a party defendant to this suit. Under this proof it clearly appears that the Southern Railroad Company must be regarded as the initial carrier. The Supreme Court of this State has held that "the rule is well established as a principle of the common law, that where a carrier receives and accepts goods marked to a place beyond the terminus of its own line, its receipt for goods so marked is to be construed as a prima facie contract to carry and deliver at the point so marked." *Chicago & N. W. Ry. Co. v. Simon*, 160 Ill. 648, and cases there cited

Where a carrier, under contract with a consignor to transport goods to a point beyond its line, delivers such goods to another carrier for the purpose of transporting them to its destination and delivering them to a consignor, such second carrier becomes the agent of the carrier receiving the goods from the consignor but the contract is between the consignor and the carrier receiving the goods. The first or initial carrier is liable to the consignor in either an action on the contract or in tort for loss of or damage to the property occurring on either of the lines, and such initial carrier may recover over against his agent, the connecting carrier, for such loss as occurred through the negligence of the connecting carrier. The consignor, if he elects to bring his action on the contract, must sue the contracting party only, which is the initial carrier, but he cannot bring a suit on the contract against a connecting carrier. *Chesapeake & O. Ry. Co. v. Radbourne,* 52 Ill. App. 203; *Anchor Line v. Dater,* 68 Ill. 370. Under these authorities, if this is an action in assumpsit, it can therefore not be maintained against those companies comprising the Illinois Traction System, but can only be maintained against the initial carrier, the Southern Railroad Company.

If, on the other hand, the shipper sues in tort, he may under the authorities above cited bring an action against either the first carrier or any other who actually committed the injury or both, but he can only recover from the connecting carrier for such damages as resulted from the negligence of such carrier. The language of the declaration in the instant case is in the form of a declaration in assumpsit, but under the authorities above cited it is clear that an action in assumpsit cannot be maintained against the appellants composing the Illinois Traction System.

The Appellate Court for the Third District in the very recent case of *Gerard v. Davis,* 225 Ill. App. 377, clearly recognized and followed the doctrine that an

122    Appellate Courts of Illinois.

Golden Grain Milling Co. v. St. L., S. & P. R. R. Co., 226 Ill. App. 116.

initial carrier is liable for all damages to property sustained not only while it is in charge of the shipment but also while any forwarding or connecting line is in charge of it, but that a forwarding or connecting line, such as the Illinois Traction System in this case, is liable only for such damages as result while the shipment is in transit on the line of such connecting or forwarding company. Under that doctrine the Illinois Traction System, being a forwarding or connecting line in this case, can only be held liable, if this could be considered an action in tort, for such damages as resulted through its own negligence while these shipments were in transit on its line. It must be borne in mind that the Illinois Traction System did not deliver these shipments to the consignee, but to the Peoria & Pekin Union Railroad Company, which line in turn delivered them to the consignee. Appellee introduced several witnesses who examined these cars after they were delivered to the consignee, whose testimony tended to show that the cars did leak and that the feed had heated as a consequence thereof. This, however, as above stated was after the cars had been delivered to the consignee. On the other hand, appellants introduced testimony showing that these cars were examined at the time they were delivered to the consignor and at other points in transit before delivery to the Peoria & Pekin Union Railroad Company, and that the cars were then in good condition and not leaking; that the feed in certain cars when examined in transit was then heated through some spontaneous action. This evidence in connection with the fact that the Southern Railroad Company, the initial carrier, furnished the cars, clearly tends to show that the damage to the feed did not result from any negligence of the Illinois Traction System. That system was a mere forwarding or connecting line and as the proof fails to show any damage caused by negligence on its part, no judgment could be sustained against the roads com-

posing that system, whether this be an action in assumpsit or an action in tort.

Apppellee contends that as there was no plea on file denying the joint liability of defendants, appellants are now precluded from raising that question on this appeal. Our Supreme Court has held that even in the absence of a plea denying joint liability, the evidence must show such liability as to all of the defendants in order to entitle the plaintiff to a judgment. *Powell Co. v. Finn*, 198 Ill. 567; *Supreme Lodge of A. O. U. W. v. Zuhlke*, 129 Ill. 298. The Illinois Traction System requested the court to submit, among others, the following special interrogatories: "Do you find that the damage to the feed was caused by reason of defective and leaky condition of the cars which existed at the time they were loaded?" The court refused to give this interrogatory. An answer to this interrogatory in the affirmative would have been inconsistent with any verdict against the Illinois Traction System. It was therefore error for the court to refuse it. The Illinois Traction System also offered an instruction to the effect that if the damage to the feed resulted from the fact that the cars were leaky, and that they were in that condition at the time they were loaded, and that the roads comprising the Illinois Traction System could not have discovered this condition by reasonable inspection at the time the cars were delivered to them and had nothing to do with the furnishing of the cars to the appellee or with their selection or inspection at the time they were loaded, the jury should not find the issues against the Illinois Traction System. This instruction, even though this be an action in tort, correctly stated the law as to this company's liability and it was error to refuse the same.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*