LORRAINE M. KING, Plaintiff-Appellee and Cross-Appellant, *v.* THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant-Appellant and Cross-Appellee.

Third District No. 3—83—0401

Opinion filed July 6, 1984.

Phillip B. Lenzini and Charles G. Roth, both of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria, for appellant.

Robert S. Calkins, of Peoria, for appellee.

JUSTICE BARRY delivered the opinion of the court:

This is an appeal from a directed verdict in favor of plaintiff Lorraine M. King entered in the circuit court of Peoria County in a cause to recover life insurance benefits under a group policy issued by defendant Equitable Life Assurance Society to cover employees of the city of Peoria.

Plaintiff's husband, Gerald King, was a Peoria police captain in

charge of the traffic division who was injured in a fall occurring while he was on duty on January 4, 1979. King's injuries, which included a broken neck, required that he be hospitalized in traction for a time and further greatly hampered his mobility after he was discharged from the hospital. He was placed on "Injured On Duty" status (IOD) and continued to receive his full salary for 90 working days following the accident. On May 15, 1979, he was placed on disability pension status, where he remained until his death on January 5, 1980, from causes unrelated to the accident.

Effective April 1, 1979, Equitable's group insurance policy insuring members of the police department was amended to increase life insurance benefits from $1,000 to $6,000 for all employees. At the time that amendment took effect, King was on IOD status, which means that his name still appeared òn the active duty roster, he was still subject to all the rules and regulations of the department, and on April 6, 1979, he received his annual $200 allowance for the expense of carrying weapons.

The insurance policy provided that while an employee was disabled, the insurance protection would be the amount for which he was last insured under the group life insurance plan prior to the discontinuance of active work. The insurance booklet given to each employee, which was a part of the policy, indicated that the increased benefits were effective as to all employees on April 1, 1979, and also stated:

"If you are absent from work on the day on which your insurance would normally begin, you will become insured on the day you return to active work."

Another pertinent provision of the policy provides that an employee's insurance will cease automatically when his employment terminates. The policy also states:

"Cessation of active work by an employee shall be deemed to constitute the termination of his employment except that * * *

(b) in the case of Life and Accidental Death and Dismemberment Insurance, an employee, absent from active work because of injury or sickness may be regarded as still in the employment of the Policyholder for the full period of such absence until the effective date entered on the insurance records maintained in connection with this policy * * *."

Although King never returned to full-time active duty, Equitable obviously considered that he was an employee on the date of his death, since his widow was tendered benefits of $1,000 plus interest which she refused. Plaintiff filed this suit to recover $6,000, and in the course of the trial before the jury, plaintiff produced several witnesses

who related the number of conferences, phone calls, police reports, and other police business which King transacted from his home both before and after April 1, 1979.

At the conclusion of all the evidence the trial court granted plaintiff's motion for directed verdict, ruling that the insurance policy was ambiguous and must be construed against the insurer. The court allowed plaintiff 6% interest on the proceeds of the policy from the date of death and denied plaintiff's motion for taxation of costs as a penalty for defendant's allegedly unreasonable and vexatious refusal to pay the amount owed.

On appeal, defendant asserts three errors: (1) that the trial court erred as a matter of law in construing the contract; (2) that the question whether King returned to work after April 1, 1979, was a question of fact for the jury; and (3) that defendant should have been ordered to pay no more than 5% interest.

■ Defendant first argues that the contract was not ambiguous since the provisions relating to the date the increased benefits took effect should be construed together to mean that the increase in benefits are payable to all persons employed by the city of Peoria on April 1, 1979, providing they are at work on that date, and any employee absent from work on April 1 will become insured in the increased amount on the day he returns to active work. We agree that the provisions should be read together, but when we do so, we find that there is still an ambiguity. The policy does not define "active work" and therein lies the ambiguity.

The rule of law in Illinois in such cases is that the issue of whether an ambiguity exists is a question of law, and further that the construction of an insurance contract presents an issue of law only, not submissible to a jury. (*E.g., Voss v. Associated Life Insurance Co.* (1976), 36 Ill. App. 3d 105, 343 N.E.2d 174.) Thus the determination of whether an ambiguity exists here was properly made by the trial court as a question of law.

Once that determination was made, a special rule of construction applies in the case of insurance policies. In *Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 379, 400 N.E.2d 921, 923, the Illinois Supreme Court stated:

> "[W]here language in an insurance policy is subject to different interpretations such ambiguity is to be construed in favor of the insured, and not the insurance company, which drafted the contract of insurance."

Here the trial court stated that the provisions of the policy were to be construed against defendant, who wrote the policy, and that the provi-

sions relating to effective date are difficult to apply "because of the lack of any clear language or definitions." We agree.

Many cases have been cited to us where insureds were found to qualify for life insurance benefits even though they were disabled to such an extent that they were at home or even in the hospital, and we have been cited to other cases denying benefits. (See Annot., 59 A.L.R.3d 993 (1974).) None of those cases involved a police officer.

When we look at the evidence presented in this case, we see that after April 1, 1979, King continued to perform some work in connection with his supervisory duties as police captain in charge of the traffic division. He resolved personnel problems, received oral reports of investigations, gave advice to subordinate police officers, called other officers in the department about police matters, made recommendations for training assignments, and was on call for large fires or other emergencies. In addition, King was involved in a dispute with some people who allegedly harassed him and his wife and threatened harm to his home. In the course of the incident, King had taken possession of a bicycle and attempted to make an arrest. Although the police superintendent testified that he considered King to be a witness and not on active duty with regard to that incident, he nonetheless at the time directed King to prepare an official report on police department forms. Presumably witnesses do not ordinarily make official police reports.

The former superintendent of police, who testified for defendant, also testified that King was "an active duty employee" prior to obtaining his disability pension on May 15, 1979. As indicated earlier, police officer King had a special status, termed "Injured On Duty," both before and after April 1, 1979, and he was on the active duty roster and receiving full pay on April 1, 1979. Though that status was not full-time work at the station, the policy did not specify full-time work as a condition for receiving increased benefits—only "active work."

■ Defendant contends that the question of what constituted "active work" was a question of fact which should have been submitted to the jury. We believe not here. In defining those words, the trial court was construing the policy, and that was an issue of law for the court, as we stated earlier. The term "active work" can logically mean the performance of *some* police duties, not necessarily full time and not necessarily away from home. We believe the trial court's construction was reasonable under the policy in question. Considering the undisputed testimony detailing work-related conversations and actions taken by King after his injury, we find that a directed verdict in favor

of plaintiff was warranted.

■■ The judgment entered by the trial court awarded plaintiff $6,000 plus 6% interest from the date of death. Defendant argues that the court erred and that the interest should have been 5% from the date of furnishing proof of death. Section 224 of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 836(1)(l)) provides for 6% interest on life insurance proceeds other than industrial, group, and annuities. Thus group life insurance of the kind involved in this case is expressly excluded from the statute and, therefore, the general interest statute (Ill. Rev. Stat. 1983, ch. 17, par. 6402) applies. Under that statute, plaintiff would be entitled to only 5% interest beginning with the date when proof of death was furnished. *Supreme Lodge A.O.U.W. v. Zuhlke* (1889), 129 Ill. 298, 21 N.E. 789.

Although the exact date when proof of death was furnished does not appear in the record, one exhibit introduced by plaintiff at trial is a letter from defendant dated March 5, 1980, indicating that a notice of death dated January 30, 1980, had been received by defendant. In the absence of other evidence, we assume that defendant had notice of death by March 5, 1980, and that interest is owing from that date in any event. In summary, we hold that the trial court erred in awarding 6% interest, and we reverse that portion of the judgment. We remand this cause for a determination of interest as directed in this opinion.

Plaintiff has cross-appealed from the order of the trial court denying her petition to assess costs against defendant under section 155 of the Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 767) which permits the court to tax costs where there was an issue as to the amount of the loss payable and it appears to the court that the company's action or delay was vexatious and unreasonable. Plaintiff argues that defendant acted unfairly in that it refused to provide a copy of the insurance policy prior to the filing of this lawsuit and that the company twice offered plaintiff $1,000 to settle her claim. Plaintiff insists that the penalty is clearly warranted and that the trial court erred by not holding a special hearing on her petition as well as by denying the petition.

In a case involving the same statute, this court observed in *Eike v. Central National Life Insurance Co.* (1970), 129 Ill. App. 2d 28, 35, 262 N.E.2d 338, 342:

> "[T]he purpose of the statute is not to allow attorney's fees simply because a defendant-company was unsuccessful in litigation. In the cause before us there were issues and ambiguities to be resolved."

We then reversed the costs allowed by the trial court.

■ Like *Eike*, in the case before us, there were also "issues and ambiguities" in the contract language which had to be resolved. Defendant should not be penalized for choosing to litigate those issues. As to defendant's refusal to furnish the full policy until after the complaint was filed, we believe it was properly within the discretion of the trial court to decline to impose a penalty for the delay. We note that plaintiff did not have to amend her complaint after seeing the full policy, and we are not aware of any prejudice to plaintiff resulting from the company's action. Under the circumstances, the trial court did not abuse its discretion in deciding to deny costs after hearing arguments of counsel and without further hearing. See *Kerouac v. Kerouac* (1981), 99 Ill. App. 3d 254, 425 N.E.2d 543.

Affirmed in part, reversed in part, and remanded with directions.

HEIPLE and SCOTT, JJ., concur.